## THE STATE v. ALLEN, Appellant.

### Division Two, February 3, 1903.

1. **Forgery: CHARGE: DELIVERY TO AGENT: VARIANCE.** Where the information charges a defendant with having forged and sold a check to a merchant, and the evidence shows it was actually delivered to his son who was at the time acting as his agent or clerk, the merchant's money or property furnishing the consideration for the check, the variance between the charge and proof is more imaginary than real.

2. ———: **EVIDENCE: PLACING CRIME ON ANOTHER.** Testimony of witnesses that they met a man of the same name as defendant's about the time of the forgery and that defendant was not that man, is only properly admissible in rebuttal, and if no evidence by the State has been admitted to which it would be in rebuttal, it should be excluded.

3. ———: ———: **ACCUMULATIVE: NEW TRIAL: DILIGENCE.** Where the only purpose of newly-discovered evidence would be to corroborate defendant's testimony, and no diligence is shown why it was not offered at the trial, the motion for a new trial should be denied.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford*, Judge.

AFFIRMED.

*W. F. Riggs* and *H. G. Kyle* for appellant.

(1) Appellant called as a witness Charles H. Dorton, and offered to prove that M. H. Allen on September 21, 1901, passed a forged check on him, and that appellant was not the person. The rejection of such offered evidence was error. State v. Bailey, 94 Mo. 311; State v. Murray, 91 Mo. 104; State v. Yaeger, 66 Mo. 180; State v. Patrick, 107 Mo. 154. The State

proved at the trial that the trunk which Marion Freling sold to M. H. Allen, mentioned in the information, was found in San Francisco, California, and brought back by the officers, and in the trunk were articles obtained in Kansas City at the time of the passing of the forged checks. Appellant then offered to prove that all the forged checks brought into the case by the prosecuting attorney were in the same handwriting, all indorsed by M. H. Allen, all M. H. Allen checks, and in the same handwriting as the check passed on Marion Freling. This offer of evidence was ruled out as immaterial. Appellant was entitled to show that he was not M. H. Allen, and was not the person who passed the very checks the prosecutor brought into the case. (2) It is no ground for the exclusion of evidence that it conflicts with other evidence in the case. State v. Farmer, 54 Mo. 439; Lane v. Railroad, 132 Mo. 4; State v. Cooper, 83 Mo. 698. Such evidence may raise a reasonable doubt. State v. Wollard, 111 Mo. 248. The court erred in giving the first instruction, because there is no evidence that appellant sold the check to Nicholas M. Freling for the consideration of $12.40, in money, and a trunk of the value of $12.50; and because the information does not charge that appellant passed the forged check on Marion Freling. State v. Parker, 106 Mo. 217; State v. Prendible, 165 Mo. 353; State v. Koplan, 167 Mo. 298. (3) If it be doubtful how the evidence would affect the result of a new trial, the motion should be granted. State v. Bailey, 94 Mo. 311; State v. Murray, 91 Mo. 104; Whar. Cr. Evi., sec. 754.

*Edward C. Crow,* Attorney-General, and *Jerry M. Jeffries* for the State.

(1) The record discloses that at the trial of this case defendant sought to prove as a defense to the charge and proof against him that at about the same time in Kansas City, Missouri, numerous other fraudulent checks were passed upon merchants of that place by one or more persons representing themselves to be

M. H. Allen, and giving the same street address that defendant gave and using the same style of check as used by defendant, and that the person who passed these checks representing himself to be M. H. Allen was not the defendant in this case. It seems that defendant thus expected to establish his innocence. Such evidence, in view of all other evidence in the case, would have no weight in establishing his innocence, and was entirely immaterial. Other forgers might have been working in conjunction with defendant (and it seems that there were), all assumed the same name and thus each one escaped punishment, or others may have heard of defendant's crime or defendant may have heard of others' crimes and sought to cover up the sinful act by going under the same name. Again, even if the facts were as asserted by defendant in his offer of this evidence, the evidence itself would have had no tendency to establish the innocence of defendant. The court properly rejected the evidence. (2) Defendant saved no exceptions to the ruling of the court in refusing to let be introduced in evidence a list of the articles found in a trunk defendant purchased with the forged check and which was afterwards found in his possession in California. Hence, he can not now complain, even though the evidence had been competent. The offer in evidence of a number of articles found in the trunk was objected to and the objection properly sustained. Defendant's theory was that these articles did not belong to the defendant; that he did not purchase them; that they would not fit him, consequently their evidence would be that defendant was not the party guilty of the crime charged. This would not have been the effect of this evidence. It would in no way have shown or even had a tendency to show that defendant was innocent, but would have shown that he had a colleague in the perpetration of the crime. Hence, it was proper to rule the evidence out as being immaterial, and as defendant was not prejudiced by such refusal, he can not complain. State v. Thomas, 78 Mo. 327; State v. Mery, 76 Mo. 348. (3) The affidavits filed disclose that the sole pur-

pose of the newly-discovered evidence was to corrob-
orate defendant's testimony. This is not sufficient.
State v. Bybee, 149 Mo. 632. Under the rule laid down
by this court defendant is not entitled to a new trial on
the ground of newly-discovered evidence. State v. Mil-
ler, 144 Mo. 26.

BURGESS, J.—On November 7, 1901, the pros-
ecuting attorney of Jackson county filed in the office of
the clerk of the criminal court of said county, an infor-
mation containing several counts, in the second of which,
the count under which he was convicted, defendant was
charged with forgery in the second degree.

The defendant, in the forenoon of September 20th
or 21st, 1901, went to the business house of N. M. Fre-
ling, a trunk and valise manufacturer in Kansas City,
Missouri, and made inquiries about a trunk which he
desired to purchase. The trunk in question was priced
to him at $12.40. Defendant left, saying that he would
consult his wife about the matter and would be back.
At about four o'clock in the afternoon of the same day
he returned and inquired for the clerk who waited on
him in the morning. He then purchased the trunk and
in payment therefor handed the cashier of the establish-
ment a check, which was as follows:

"$25.                                        No. 154.
"Omaha, Neb., Sept. 20, 1901.
"Omaha National Bank, United States Depositary.
"Pay to M. H. Allen Cigar Company, or order,
twenty-five dollars.
"CONSOLIDATED CIGAR MFG. COMPANY.
"ALBERT STANTON, Mgr."

And upon the back of the check was the following:
"M. H. Allen Cigar Company, per M. H. Allen." When
defendant presented this check he stated that he was
the manager of the Allen Cigar Manufacturing Co.,
and would shortly desire a number of sample cases, as
the firm expected to put on the road a number of sales-
men; that they were doing a wholesale cigar business in

Kansas City, and had offices at a certain number, naming it. The cashier took the check, paid defendant the difference in money, and delivered the trunk to him. Later it appeared that there was in existence no such a firm as the Consolidated Cigar Manufacturing Co., or the M. H. Allen Cigar Co., but that both were fictitious. The check was protested at Omaha, Nebraska, and returned. Inquiry failed to locate the defendant. It appeared that a number of other Kansas City merchants were defrauded at about the same time and in the same manner. The defendant was found to have been in Lincoln, Nebraska, and from there went to San Francisco, California, where he was located and arrested at the baggage depot of the railroad, just as he was removing his two trunks therefrom, one of which was the trunk purchased of Freling in Kansas City for which he gave the bad check. When under arrest he gave his name as Wilson, and said he was from New York; that the trunks belonged to his uncle who had just arrived from Saint Paul, Minnesota. He was positively identified by a number of persons. The defendant said he had never been in Kansas City; that he had not been in Lincoln, Nebraska, and that the witness from there who identified him was mistaken, but on the contrary for several days before and after and at the time the crime was committed he was in Omaha, Nebraska, but this evidence was very conflicting. On the trial defendant was found guilty as charged in the second count in the information and his punishment fixed at five years in the state penitentiary. In due time he filed his motions for new trial and in arrest of judgment, which were overruled, and he now appeals to this court.

The information, leaving off the formal parts, is as follows:

"And the prosecuting attorney aforesaid, upon his official oath aforesaid, further informs the court that M. H. Allen on the 21st day of September, A. D. 1901, at the county of Jackson and State aforesaid, unlawfully and feloniously did have in his possession and custody with the felonious intent to utter and pass the same as

true and genuine, a certain false, forged and counterfeited check purporting to be drawn upon the Omaha National Bank, an incorporated bank under the laws of the United States of America, and purporting to be made by the Consolidated Cigar Manufacturing Company, Albert Stanton, Mgr., a fictitious company, which said false, forged and counterfeited check is of the purport and effect following, that is to say, to-wit: 'Omaha, Neb., Sept. 20, 1901, No. 154. Omaha National Bank, $25.00, United States Depositary. Pay to M. H. Allen Cigar Company or order twenty-five dollars. Consolidated Cigar Mfg. Company, Albert Stanton, Mgr.' He, the said M. H. Allen, then and there knowing the said check to be falsely made, forged and counterfeited; against the peace and dignity of the State.

"And the prosecuting attorney aforesaid, upon his official oath aforesaid, further informs the court that one M. H. Allen, whose Christian name in full is unknown to said prosecuting attorney, at the county of Jackson and State of Missouri, on the 21st day of September, A. D. 1901, a certain false, forged and counterfeited check purporting to be drawn upon the Omaha National Bank, an incorporated bank under the laws of the United States of America, and purporting to be made by Consolidated Cigar Manufacturing Company, Albert Stanton, Mgr., a fictitious company, which said false, forged and counterfeited check is of the purport and effect following, to-wit: 'Omaha, Neb., Sept. 20, 1901, No. 154. Omaha National Bank, $25.00, United States Depositary. Pay to M. H. Allen Cigar Company or order twenty-five dollars. Consolidated Cigar Mfg. Company, Albert Stanton, Mgr.' Then and there feloniously, did pass, utter and publish as true and genuine to one Marion Freling with the felonious intent then and there to defraud; he, the said M. H. Allen, then and there well knowing the said false, forged and counterfeited check to be false, forged and counterfeited; against the peace and dignity of the State."

The court instructed the jury as follows:

"The court instructs the jury that if you find and

believe from the evidence that at the county of Jackson and State of Missouri, at any time within three years before November 7, 1901, the defendant, M. H. Allen, did unlawfully and feloniously have in his custody and possession a certain false, forged and counterfeited check purporting to be drawn on the Omaha National Bank of Omaha, Nebraska, an incorporated bank under the laws of the United States of America, and purporting to be made by the Consolidated Cigar Manufacturing Company, Albert Stanton, Mgr., a fictitious company, and that the said M. H. Allen did unlawfully and with the felonious intent to injure and defraud, sell and deliver the said falsely made, forged and counterfeited check described in the information herein to one Nicholas M. Freling for the consideration and sum of $12.40 in lawful money, and one trunk of the value of $12.60, and all of the value of twenty-five dollars, the money and property of the said Nicholas M. Freling, with the felonious intent to have the same uttered and passed, he, the said M. H. Allen, then and there well knowing the said check to be falsely made, forged and counterfeited, you will find the defendant guilty as charged in the second count in the information and assess his punishment at imprisonment in the State penitentiary at not less than five years and not more than ten years.

" 'Felonious,' as used in these instructions, means wickedly and against the admonition of the law, unlawfully.

"Flight raises the presumption of guilt, and, if the jury believe and find from the evidence that after the commission of the offense alleged in this information, the defendant fled from the State, and tried to avoid arrest and trial for said offense, then the jury may take this fact into consideration in determining his guilt or innocence.

"The court instructs the jury that before they can convict the defendant, they must be satisfied of his guilt beyond a reasonable doubt; such doubt to authorize an acquittal upon reasonable doubt, must be a substantial doubt of the defendant's guilt, with a view to all the

State v. Allen.

evidence in the case, and not a mere possibility of the defendant's innocence.

"The court instructs the jury that the defendant is a competent witness in this case, and you must consider his testimony in arriving at your verdict, but in determining what weight and credibility you will give to his testimony in making up your verdict, you may take into consideration, as affecting his credibility, his interest in the result of the case, and that he is the accused party on trial, testifying in his own behalf.

"The jury are the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony.

"In determining as to the credit you will give to a witness, and the weight and value you will attach to a witness's testimony, you should take into consideration the conduct and appearance of the witness upon the stand, the interest of the witness, if any, in the result of the trial, the motives actuating the witness in testifying, the witness's relation to or feelings for or against the defendant, or the alleged party, the probability or improbability of the witness's statements, the opportunity the witness had to observe and to be informed as to matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to matters within the knowledge of such witness. All these matters being taken into account, with all the other facts and circumstances in evidence, it is your province to give to each witness such credit and the testimony of each witness such value and weight as you deem proper.

"The court instructs the jury that if there is any evidence before you that raises in your minds a reasonable doubt as to the presence of the defendant at the time and place where the crime is charged to have been committed, if you find a crime was committed, you will acquit the defendant."

It is said for defendant that the information charges him with having sold and delivered to Nicholas M. Freling, for the consideration of twenty-five

dollars, a forged check, when the evidence shows that the check was sold and delivered to one *Marion* Freling, and, it is insisted that this variance is fatal to the prosecution. But the evidence shows that Marion Freling is the son of Nicholas M. Freling; that he (Marion) received the check from defendant, and paid him twelve dollars and sixty cents in money, being the difference in amount between the check and the purchase price of the trunk, and that the money was his father's, so that the variance is more imaginary than real. It is clear, we think, from the evidence, that while the check was delivered to Marion Freling, it was his father's money and property that furnished the consideration for the transfer of it, and in the transaction he (Marion) was acting as the agent or clerk for his father.

Defendant offered to prove by several witnesses, upon whom forged checks were passed about the same time that the one in question was passed upon Freling, that defendant was not the man who did it, and by others that they had met a man about that time by the name of M. H. Allen, and that defendant was not that man, which upon objection of the State was ruled out, and the action of the court in thus ruling is assigned for error. This evidence could only have been properly admitted in rebuttal to evidence adduced by the State, and as no evidence was introduced by the State to which it would have been in rebuttal it was properly excluded. As independent evidence it was immaterial, and clearly inadmissible.

It is also claimed that the court committed error in giving the first and second instructions because of the want of evidence showing that defendant sold or delivered the forged check to Nicholas M. Freling. This question was in effect ruled adversely to this contention in the first paragraph of this opinion, and it is not necessary to say more with respect to it than that the contention is without merit.

It is finally contended that the court erred in refusing to grant defendant a new trial because of the want of legal evidence to convict, and the newly-discovered

evidence set forth in the affidavits filed in support of the motion for a new trial. As to the first proposition, the evidence was not only sufficient to justify the conviction, but it was, we think, conclusive, or so nearly so as to leave no reasonable doubt in the minds of the jury with respect thereto.

With respect to the newly-discovered evidence its only purpose could have been to corroborate the defendant's testimony, and as no diligence is shown why it' was not offered at the trial, a new trial should not be granted upon that ground. [State v. Bybee, 149 Mo. 632.]

Finding no reversible error in the record we affirm the judgment. All concur.

---

171    571<br>177  ²716

