# THE STATE v. TOM CRAFT, Appellant.

### Division Two, June 11, 1923.

1. **INFORMATION: Robbery: Person in Possession.** In charging robbery in the first degree, it is not necessary that the person alleged to have been in possession of the property taken be some one of those named in the statute. Those statutory words are to be regarded as words of description rather than words of limitation. The ownership of the property taken may be laid in the person in possession of it at the time of the robbery.

2. ———: ———: **Charge of Ownership: Assistant Cashier.** An information charging that defendant, "in and upon one Irvin Waller, assistant cashier and in charge of the Bank of Qulin, unlawfully and feloniously did make an assault and $3500, lawful money, the property of the said Bank of Qulin, in the presence and against the will of said Irvin Waller, by violence to said Irvin Waller, and by putting the said Irvin Waller in fear of some immediate injury to his person, feloniously did rob, steal, take and carry away," sufficiently charges that said assistant cashier was in lawful custody of the money belonging to the bank, and brings the offense within the purview of the statute.

3. ———: ———: **From the Person.** It is not necessary that the information charge that the money was taken "from the person" of the assistant cashier; it is sufficient if it charges that the assistant cashier was in lawful custody of money belonging to the bank, and that defendant took it in his presence and against his will.

4. ———: ———: **Conjunctively.** Where the one crime may be perpetrated in different ways, the information should charge the manner conjunctively, and not disjunctively, and use "and" instead of the statutory word "or."

5. **JURORS: Evidence at Former Trial.** Jurors who had heard portions of the testimony at the trial of co-indictees who had been tried and convicted of the same robbery with which defendant was charged, and who stated on their *voir dire* that such testimony would not bias or influence their minds, but that they would render a verdict according to the evidence adduced at the trial, are not to be held incompetent on appeal, and it was not error to refuse to exclude them.

6. ———: **Knowledge of Facts.** Whatever may be the source or the nature of the information possessed by jurors in regard to the case on trial, their knowledge will not render· them incompetent, if it appears from their examination that they can and will give the accused a fair and impartial trial on the evidence adduced.

7. ·———: **Specific Challenges.** Challenges to the qualifications of jurors should be specific, and unless the trial court is apprised of the nature of the challenge, and it comes within the terms of the statute, the ruling denying it will not be disturbed on appeal.

8. **EVIDENCE: Previous Declarations of Accused: Intent.** Declarations by defendant, charged with having robbed a certain bank, made before the crime was committed, that he knew where he and the witness could make some money by robbing said bank, and conversations with others about robbing said bank, are admissible as tending to show a felonious intent, and as a circumstance tending to show a contemplated purpose to commit the crime.

9. ———: **Repudiated Confession: Instruction.** A repudiated confession made by a co-indictee who has testified for defendant is admissible in evidence for the sole purpose of affecting the credibility of the co-indictee's testimony, and an instruction telling the jury it is admissible for that purpose alone is proper.

10. **INSTRUCTIONS: Proof of Guilt: Circumstances.** An instruction defining the character of testimony that may be adduced to prove the guilt of defendant, and telling the jury that it may not be confined to the testimony of eye-witnesses of the crime, but may be proved from facts and circumstances from which his guilt may be inferred, is not improper where a portion of the proof of his guilt is not circumstantial, and especially where another correct instruction defining the facts and circumstances necessary to be shown to authorize a verdict of guilty is given.

11. ———: **Conspiracy: Antecedent Statements.** The use of the words "to rob" in the instruction telling the jury that they must find a conspiracy to rob the bank existed before they could consider any statement made by other participants out of defendant's presence, limits the time of such statements to a period anterior to the robbery.

12. ———: **Corroboration.** It is not necessary to define the word "corroboration" used in an instruction relating to the testimony of an accomplice.

13. ———: **On Circumstantial Evidence.** Where there is both direct and circumstantial evidence of defendant's guilt, it is· not error to refuse to give an instruction on circumstantial evidence, but the

defendant is not injured by the giving of a proper instruction on the subject.

14. **CONSPIRACY: Evidence.** A conspiracy to commit the crime charged may be established by circumstantial evidence; and the order of the introduction of testimony to establish its existence, in so far as it relates to the acts and declarations of the conspirators, is largely within the discretion of the trial court.

15. **ARGUMENT TO JURY: Prejudicial Remarks: Cure.** A withdrawal of remarks by the prosecuting attorney, by strict construction prejudicial, or an immediate instruction to the jury by the court, upon objection, to disregard them, cures any alleged error in making them.

Appeal from Butler Circuit Court.—*Hon. Almon Ing,*
Judge.

AFFIRMED.

*Henson & Woody* for appellant.

(1) Defendant was denied the constitutional right to be tried by an impartial jury of his country. Jurors O'Dell, Abington, Ham and Brickell had heard the testimony of Waller, the cashier, and O. D. Brown, the State's principal witness, in the case against Yates and Adkins. The court erred in overruling defendant's challenge to these jurors, and permitted them to sit on the panel out of which defendant was required to select the panel of twelve who were to try him. Bill of Rights, sec. 22; Gibney v. Transit Co., 204 Mo. 704, 717; Theobald v. Transit Co., 191 Mo. 395, 416; State v. Fullerton, 90 Mo. App. 411; Tatlow v. Grantham, 66 Mo. App. 509; Pearcy v. Ins. Co., 111 Ind. 59; Johnson v. Tyler, 1 Ind. App. 359; State v. Burnside, 37 Mo. 343; State v. Wyatt, 50 Mo. 309; State v. Taylor, 64 Mo. 358. (2) Robbery in the first degree can only be committed in one of two ways under the statute: (a) By feloniously taking the property of another from his person, or in his presence, against his will, by violence to his person, or putting him in fear of some immediate injury to his person, or, (b)

by feloniously taking the property of another from the person of his agent in charge thereof, and against the will of his agent, by violence to the person of such agent or putting such agent in fear of some immediate injury to his person.    The information does not charge, nor does the proof show, the commission of the crime of robbery in the first degree, and defendant's demurrer at the close of the whole case should have been sustained. R. S. 1919, sec. 3307; State v. Owens, 268 Mo. 481; Abbott v. Western U. Tel. Co., 204 S. W. 769; Northern Securities Co. v. United States, 193 U. S. 197, 8 L. Ed. 679, l. c. 709; United States v. Morris, 14 Pet. 464, 10 L. Ed. 534; Com. v. Martin, 17 Mass. 359; Moore v. Telegraph Co., 164 Mo. App. 171; 33 Cyc. 1182-1187; State v. Butler, 178 Mo. 272; Riddick v. Territory, 1 Mo. 147; State v. Shortell, 174 Mo. App. 159; State v. McMahon, 234 Mo. 611; State v. Koock, 202 Mo. 223, 235; State v. McCance, 110 Mo. 289, 296; State v. Schuchmann, 133 Mo. 117; State v. Howard, 137 Mo. 289, 296; State v. Reed, 125 Mo. 43, 48; State v. Bryant, 90 Mo. 534, 537; Ex parte Helton, 117 Mo. App. 609, 625; State v. Gritzner, 134 Mo. 512, 527.   (3)    The court erred in admitting the testimony of witnesses concerning alleged conversations between them and defendant with reference to robbing the Bank of Qulin, for the reason that such conversations, even if they were had, did not tend in any way to prove the crime charged.    State v. Monroe, 273 Mo. 341; State v. Burlingame, 146 Mo. 226; State v. Stike, 149 Mo. App. 105; State v. Smith, 250 Mo. 274; State v. Spray, 174 Mo. 569; State v. Teeter, 239 Mo. 485; State v. Horton, 247 Mo. 657; State v. Hyde, 234 Mo. 250; 8 R. C. L. sec. 200, p. 206.    (4)    Statements, acts or declarations made by a co-conspirator after the common criminal enterprise has been accomplished, are inadmissible against another co-conspirator.    Instruction numbered six is therefore erroneous because it did not limit the statement or statements to a time prior to the accomplishment of the alleged common criminal en-

terprise. (5) Instruction numbered two is erroneous because it does not define the term "corroboration." State v. Sprague, 149 Mo. 409; State v. Donnely, 130 Mo. 642. (6) Instruction numbered seven is prejudically erroneous for the reason that there is no evidence upon which to base it, and because it injects issues into the case not raised by the evidence. State v. Goodwin, 213 S. W. 264. (7) Instruction numbered five is further erroneous because it assumes that a crime has been committed, and that defendant was in some manner connected with the commission thereof. State v. Mills, 272 Mo. 526; State v. Vaughn, 141 Mo. 514; State v. Lee, 272 Mo. 171.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondent.

(1) The information is sufficient. It contains all necessary averments required to properly charge the crime of robbery in the first degree and fully informs the defendant as to the charge he must meet. Sec. 3307, R. S. 1919; State v. Lamb, 141 Mo. 301; State v. Calvert, 209 Mo. 286; State v. Flynn, 258 Mo. 214, 224; State v. Williams, 183 S. W. 309. (a) Section 3307 defines but a single offense of robbery, but sets out two methods of perpetrating the one crime defined. The information charges, in the conjunctive, that the offense was committed in both ways. Not being inconsistent with or repugnant to each other, the pleading is not duplicitous. State v. Flynn, 258 Mo. 219-224; State v. Williams, 183 S. W. 309; State v. Reich, 239 S. W. 836; State v. Eddy, 199 S. W. 187. (b) "Assistant cashier and in charge of the Bank of Qulin," is tantamount to "clerk or agent in charge of the Bank of Qulin." State v. Wilson, 237 S. W. 777; State v. Reich, 239 S. W. 838. (c) "Violence to the said Irvin Waller" is tantamount to "violence to the person of the said Irvin Waller." (2) Appellant complains that the trial court committed reversible error in failing to discharge Jurors O'Dell, Abington, Ham and Brickell, upon challenge for cause. This complaint

is without merit. The questions put to and answers received from these jurors produced ample information to enable appellant to exercise judiciously his right of peremptory challenge. State v. Mann, 83 Mo. 596; State v. Herring, 268 Mo. 529. (a) Discretion as to sufficiency of examination rests in the trial court. State v. Garth, 164 Mo. 562; State v. Brooks, 92 Mo. 589; State v. Myers, 198 Mo. 247. (b) No specific ground of challenge was given by appellant to said jurors. The grounds for challenge must be stated. The trial court is entitled to know the reason for challenge. Sec. 6632, R. S. 1919; State v. Reed, 137 Mo. 132; State v. Taylor, 134 Mo. 142; State v. Myers, 198 Mo. 248. (3) The testimony of witnesses, complained of by appellant related to conversations with this appellant pertaining to this identical crime, to-wit, the robbery of the Bank of Qulin and was entirely competent. Authorities cited by appellant on this point refer to testimony of separate and distinct offenses from the one on trial, and are not in point here. (4) The gist of Instruction 6 complained of by appellant, is that the jury must first find a conspiracy or common design to rob the Bank of Qulin before they could consider any statement or statements made by Brown, Nicholson, Yates or Adkins, or either of them out of the presence of appellant, and it is a correct statement of the law regarding a conspiracy. The use of the words "to rob" and "to commit" limits the time of such statements anterior to the robbery. (5) Instruction 2, is in form often approved by this court and is not subject to the criticism made by appellant that it fails to define the word "corroborate." State v. Dawson, 124 Mo. 422; State v. Crab, 121 Mo. 565; State v. Harkins, 100 Mo. 672. (6) The giving of Instruction 5, does not constitute reversible error. The gist of it is simply a statement that it is not necessary, to prove an offense, that the witnesses be eye-witnesses, but that facts and circumstances from which the offense may be reasonably and satisfactorily inferred are sufficient proof. When

299 Mo.—22

read together with all the other instructions, as it must be, no substantial right of the appellant has been violated. (7) A conspiracy may be shown by circumstantial evidence alone, and in the reception of such evidence great latitude is allowed. The facts and circumstances stated in evidence in this case show a conspiracy between Craft, Yates, Adkins, Brown and Nicholson, to rob the Qulin bank. State v. Walker, 98 Mo. 104; State v. Fields, 234 Mo. 623; State v. Roberts, 201 Mo. 728; State v. Kolafa, 236 S. W. 304; State v. Hembree, 242 S. W. 914. (8) The evidence amply supports the verdict and this court will not interfere. State v. Rumfelt, 228 Mo. 456; State v. Fields, 234 Mo. 627; State v. Hembree, 242 S. W. 914.

WALKER, J.—Appellant was charged with others by information in the Circuit Court of Butler County with robbery in the first degree, under Section 3307, Revised Statutes 1919. A severance was granted, and he was tried, found guilty and his punishment assessed at ten years' imprisonment in the penitentiary. From this judgment he appeals.

On the second day of February, 1921, the bank of Qulin, Butler County, was robbed by two armed men, afterwards shown by their confessions to have been O. D. Brown and Rolla Nicholson. On the afternoon of the day stated they entered the bank, which was at the time in charge of the assistant cashier, and commanded him and two others named Adkins and Yates who were in the bank, to throw up their hands. Adkins and Yates were then ordered into the vault and the cashier was required to open the safe. Something more than three thousand dollars was taken therefrom by the robbers, who then ordered the cashier into the vault, and he and Adkins and Yates were locked in. The robbers then went out at the rear door of the bank, mounted the horses of Adkins and Yates, which had been hitched there, and rode away. A short time thereafter those confined in the vault, with the aid of a screw-driver or monkey-

wrench, which had been known by Yates to be in the vault, succeeded in loosening the bolts of the vault door from the inside and made their exit therefrom. About two hours thereafter Brown and Nicholson were apprehended about six miles from Qulin. They were brought to Poplar Bluff and lodged in jail. Two or three days thereafter they made a confession in which they implicated Adkins, Yates and the appellant as accomplices in the robbery. Nicholson on the witness stand at the trial of Adkins and Yates, who were tried before the appellant, testified that his confession was false, and that neither the appellant nor either of the others named had any connection with the crime. At that trial Adkins and Yates were each convicted and sentenced to five years' imprisonment in the penitentiary. At the appellant's trial Nicholson did not testify for the State, but his confession was introduced to affect his credibility as a witness for the appellant. Aside from Brown's testimony, no witness testified to the appellant's complicity in the robbery, the evidence being otherwise circumstantial.

The material facts concerning the confessions were that appellant and Brown began to discuss plans for the robbery of the bank in the latter part of the year 1920. The perpetration of the crime was postponed from time to time until about the first of February, 1921, when appellant went to where Brown was working at the Crown Bar in Poplar Bluff and told him he had another man in the deal, who proved to be Nicholson; the latter joined them soon thereafter, and the three discussed the robbery while they were eating their lunch that day. Some time during that afternoon or night they went to the Butler County Railroad, where Nicholson had left a railroad-speeder, which he stated he had brought from Qulin, which was distant about sixteen miles. Appellant had before that time procured disguises and overalls to be used in the hold-up. He also gave Brown an automatic pistol to be used for a like purpose. Some time during

that night they proceeded on the speeder to Qulin, reaching there at three or four o'clock in the morning of February 2, 1921. On their arrival, by prearrangement, they went to the barn of Yates, where they were to remain concealed until the crime was to be committed. The appellant went to a hotel and obtained some bed clothes to be used by them during their stay in the barn. The morning of their arrival at Qulin and while they were in the barn Yates came out and they asked him to request the appellant to bring them something to eat and some cigarettes. Upon appellant's arrival later they made the same request of him, which he complied with. While appellant was there Adkins came, and Brown, turning to Nicholson, said: "What in the h——l is he doing here?" Nicholson replied: "He is one of the boys; I am going to ride his horse off." To which Brown replied: "I have been wondering how Nicholson would get away, as I am to ride Yates's mare away after the job is pulled off." During the afternoon, Yates, Nicholson, Brown and the appellant were together in the barn. They discussed the arrangement of the robbery, fixed the time of its commission and put on the disguises to see how they would look, or in other words, held a rehearsal. It was agreed that appellant and the others who did not actually participate in the robbery, were to misdescribe Brown and Nicholson, to divert any suspicion of their participation in the crime, and the false descriptions were agreed upon. As prearranged, Adkins and Yates got their horses and rode out into the country for a time and upon returning hitched them at a rack in the rear of the bank. They then went into the bank and asked the assistant cashier if he would not calculate the interest on a note the bank held against them, as they desired to renew it. The entrance to the bank was visible from the barn where Brown and Nicholson were concealed. While the interest was being calculated Adkins stepped out of the bank door and held up his hand, which had been agreed on as the signal to Brown and Nicholson to come

on, which they did, and the robbery was committed as has been stated.

The evidence on behalf of the appellant was in effect as follows:

Nicholson testified in the appellant's case that the latter had nothing to do with the robbery; that the witness did not go with him and Brown to Qulin; and that he did not see the appellant on the day the bank was robbed. Adkins and Yates denied any knowledge of the crime or that Brown and Nicholson were concealed in Yates's barn. Appellant denied any knowledge of or participation in the robbery, or that he gave a pistol to Brown, or took any lunch to Brown and Nicholson while they were in concealment.

The information, omitting purely formal matters and the names of the defendants, charges that Thomas J. Craft, on a day named, in Butler County, Missouri, "in and upon one Irvin Waller, assistant cashier and in charge of the Bank of Qulin, a banking corporation duly organized and existing under and by virtue of the laws of the State of Missouri, unlawfully and feloniously did make an assault and thirty-five hundred dollars lawful money of the United States of the value of thirty-five hundred dollars, the property of the said Bank of Qulin, in the presence and against the will of the said Irvin Waller then and there by violence to the said Irvin Waller and then and there by putting the said Irvin Waller in fear of some immediate injury to his person feloniously did rob, steal, take and carry away; against the peace and dignity of the State."

I. It is not necessary in charging robbery in the first degree that the person alleged to have been in the lawful possession of the property taken, be limited to those named in the statute. The gravamen of the offense consists in the taking by violence or by putting in fear, the money or property of another from one who was at the time in the lawful possession of the same. Whether that one was the owner or the legal cus-

<span style="font-variant: small-caps;">Information.</span>

todian is immaterial so far as the charging of the offense is concerned. The words of the statute, therefore, defining those from whom the unlawful taking of property shall constitute robbery may be disregarded as words of description rather than of limitation. This we have held by implication in recognizing the validity of indictments or informations which did not allege the custody of the property taken to have been in possession of one of those designated in the statute. [State v. Wilson, 237 S. W. (Mo.) 776; State v. Carroll, 214 Mo. 392.] In fact, so far as the sufficiency of the charge is concerned the ownership of the property taken may be laid in the one in possession of same at the time of the robbery. [State v. Montgomery, 181 Mo. 19; State v. Lamb, 141 Mo. 301; State v. Reich, 239 S. W. (Mo.) 835; State v. Flynn, 258 Mo. 211.] It is immaterial whether the one in possession of the property holds it at the time of the robbery as owner or bailee. [State v. Huffman, 238 S. W. (Mo.) 430.]

It is further contended that the information is insufficient in that it does not charge that the assistant cashier was the owner of the money taken or that he had any interest therein. This contention omits from consideration the nature of the offense denounced by the statute which we have before discussed. The information does allege that appellant made the assault upon the assistant cashier who was at the time in the lawful custody of the money belonging to the bank and by putting him in fear of some immediate injury to his person, feloniously did rob, steal, etc. These allegations are ample to bring the offense within the purview of the statute. In addition, it is not necessary to the validity of the information that the money be alleged to have been taken ''from the person'' of the assistant cashier. It is charged that the taking was in his presence and against his will. This with the other allegations employed constitutes a sufficient compliance with the statute. The essential allegations necessary to charge robbery in the first degree are the same in the statute as at common law. Under the latter the words ''in his presence'' are by judicial construction held to be substitutionary or tantamount in

State v. Craft.

meaning to the words "from his person." [East P. C.,
723, 725, 728; State v. Lawler, 130 Mo. l. c. 371; State
v. Kennedy, 154 Mo. 268; James v. State, 53 Ala. 380;
Clements v. State, 84 Ga. 660; State v. Calhoun, 72
Iowa, 432; Turner v. State, 1 Ohio St. 422, 2 Am. St.
252.] These cases hold that where the words "in the
presence" are used in a statute mentioning only a tak-
ing "from the person" the use of the former words and
the omission of the latter does not render the indictment
or information insufficient.

Nor is the information defective in charging the man-
ner in which the crime was committed, conjunctively in-
stead of disjunctively. Where there is but one crime
denounced, but the manner in which it may be perpetrated
is described in different ways, it may be charged in a
single count; but in charging the same the conjunctive
"and" must ordinarily, in the information or indictment,
take the place of "or" as used in the statute. When
thus charged the proof of either of the ways in which
the offense may be committed will sustain the allegation.
[State v. Reich, 239 S. W. (Mo.) 835; State v. Williams,
183 S. W. (Mo.) 308; State v. Flynn, 258 Mo. 211.]

II. It is contended that the trial court erred in re-
fusing to excuse certain jurors who on their *voir dire*
examination stated that they had heard portions of the
testimony in the trial of Yates and Adkins, co-indictees of
Jurors.   appellant who had theretofore been tried and con-
victed for the same offense. No right accorded by
law to the appellant in the examination of jurors to de-
termine their qualifications was denied. As is admitted
by the appellant each of these jurors stated that the por-
tions of the testimony they had heard would not bias or
influence their minds, but that they would render a ver-
dict in accordance with the evidence adduced at the trial.
The state of mind of the jurors disclosed by this ex-
amination rendered them competent and the trial court
did not err in so holding.

It should be borne in mind that a juror's qualifica-
tion is to be tried by the court. Having been thus tried

the court's ruling in regard thereto is attended with a presumption of correctness which can be overthrown only by evidence disclosing other than an impartial mind. We have recently had occasion in State v. Poor, 286 Mo. 644, to review the leading cases on this question in this and other jurisdictions. The conclusion there reached is to the effect that whatever may be the source or the nature of the information possessed by jurors in regard to the case on trial, if it appears from their examination that they can and will give the accused a fair and impartial trial on the evidence, that the knowledge they theretofore possessed of the case will not render them incompetent. This rule was expressly applied in State v. Garrett, 285 Mo. 288, in which certain jurors, otherwise competent, were held not to be disqualified because they had heard portions of the testimony on a former trial of the accused for the same offense. A like application of the rule was made in State v. Ivy, 192 S. W. (Mo.) 737. Except to give consideration to each assignment of error made by the appellant it would have been sufficient to dispose of the objection to these jurors to say that it does not appear that the challenges to their qualifications were specific. Unless the trial court is apprised of the nature of challenges and that the same are within the terms of the statute (Sec. 6632, R. S. 1919), the ruling in that regard will not be disturbed. [State v. Myers, 198 Mo. 1. c. 248 and cases; State v. Mace, 262 Mo. 154; State v. Ray, 225 S. W. (Mo.) 973.]

III. It is contended that error was committed in the admission of the evidence of certain witnesses for the State, who testified that at different times before the crime was committed appellant had talked to them about robbing the bank. To one of them he stated that he knew where he and the witness could make some money by robbing the Bank of Qulin. Testimony of this character is admissible as tending to show a felonious intent on the part of the accused to commit the crime with which he is charged. In other words, such declarations may be classified, where as here,

*Prior Declarations.*

they have an immediate connection with the crime, as
circumstances tending to show a contemplated purpose to
commit the same. [Howard v. State, 109 Ga. 137; 16
C. J. sec. 1040, p. 545 and notes.]

Wharton in discussing the relevancy of this charac-
ter of testimony states that it is in the nature of a cir-
cumstance showing that the · accused contemplated or
was making preparations to commit the crime and is ad-
missible where it is shown that the conduct of the ac-
cused, or, in this instance, his declarations, have an ob-
vious connection with the crime with which he is charged.
[2 Wharton, Cr. Ev. (10 Ed.) sec. 915, p. 1716.]

IV.   The jury was instructed that the admission of
the confession of Rolla Nicholson, which he had repudiat-
ed, was for the sole purpose of affecting the
credibility of his testimony.   It was proper for
that purpose.   Appellant is in error in contending that
no such instruction was given.

**Instructions.**

Instruction numbered 5 declared the law in regard
to the character of the testimony that may be adduced to
prove the guilt of the appellant, in that it may not be
confined to the testimony of eye-witnesses of the crime,
but may be proved from facts and circumstances from
which his guilt may be reasonably inferred.   This in-
struction is a literal rescript of one given in State v.
Gullette, 121 Mo. l. c. 452, 457, where it was held that
the proof of the defendant's guilt not being circumstan-
tial, or at least but a portion of it, the instruction was
not error.   This is especially true in the instant case in
which notwithstanding the evidence of guilt other than
that of a circumstantial nature, the jury were, in addi-
tion to Instruction 5, correctly instructed as to the facts
and circumstances necessary to be shown.to authorize a
verdict of guilty.   Under no reasonable interpretation,
therefore, can this instruction be held to have misled the
jury.   [State v. Arnett, 210 S. W. (Mo.) 83.]   Moreover
this instruction is in no wise contradictory or inconsist-
ent with Instruction 9, which is in the frequently ap-

proved form defining a presumption of innocence and a reasonable doubt as these terms are employed in instructions.

The giving of instruction numbered 6 complained of was to the effect that the jury must first find that a conspiracy or common design to rob the Bank of Qulin existed before they could consider any statements made by Brown, Nicholson, Yates, Adkins or either of them out of the presence of the appellant. The use of the words "to rob" and "to commit" as used in the instruction, limits the time of such statements to a period anterior to the robbery, but after the conspiracy was entered into. [State v. Bobbitt, 215 Mo. 10; State v. Roberts, 201 Mo. l. c. 728.]

Error is assigned in the giving of instruction numbered 2, defining an accomplice, the manner in which his testimony should be received and considered when not corroborated, and that the accused may be convicted upon the testimony of an accomplice alone if the jury believes his testimony to be true and that the facts sworn to by him, if any, establish the guilt of the accused. This instruction has in the form here employed received the approval of this court in State v. Cummins, 279 Mo. l. c. 209. In State v. Bobbitt, 215 Mo. 10; State v. Sassaman, 214 Mo. l. c. 729, and State v. Daly, 210 Mo. l. c. 680, it was held in an instruction identical in verbiage to the above that it was not necessary to define the word corroborated as contended for by appellant. This ruling is based, as stated in the Bobbitt Case, upon the reason that the word is not one of the constituent elements of the crime; and it might well have been added, that it is a word in ordinary use, readily understood by any one competent to serve on a jury and hence its definition was not necessary. [State v. Affronti, 238 S. W. (Mo.) l. c. 111; State v. Cummins, 279 Mo. 208.]

Complaint is made of the giving of Instruction 7 on circumstantial evidence. As we said in effect in State v. Emmons, 285 Mo. l. c. 60, and State v. Crone, 209 Mo.

l. c. 331, under like facts as at bar, there was both direct and circumstantial evidence of the appellant's guilt, and while it would not have been error had the court refused to give an instruction on circumstantial evidence, we are at a loss to see how he is injured by the giving of such an instruction. This contention therefore is without merit. The evidence was ample to sustain the charge of robbery and there was no testimony to authorize the giving of an instruction for larceny.

V. The latitude permissible in the introduction of testimony to prove a conspiracy was not exceeded. It may be shown by circumstantial evidence alone. Both facts and circumstances were introduced in that behalf in this instance. They were sufficient to establish a conspiracy between appellant and his co-indictees to rob the Qulin Bank. The order of the introduction of the testimony to prove the existence of a conspiracy, so far as concerns the acts and declarations of the conspirators, must be left largely to the discretion of the trial court. Unless it appears that such discretion was abused, its exercise will not be interfered with. [State v. Hembree, 242 S. W. (Mo.) l. c. 914; State v. Kolafa, 236 S. W. (Mo.) l. c. 304; State v. Fields, 234 Mo. l. c. 623.]

Conspiracy.

VI. The complaint as to the prejudicial remarks of the prosecuting attorney is not well founded. If in any instance these remarks can, by the strictest construction, be held to have been prejudicial, the jury was directed not to consider them or they were immediately, upon objection being made thereto, withdrawn.

Remarks of Attorneys.

There was no prejudicial error committed in the trial and the evidence was sufficient to sustain the verdict. The judgment is affirmed. All concur.