STATE OF MISSOURI, Respondent, v. RICHARD PRICE, Appellant, No. 42288—238 S. W. (2d) 397.

Division One, March 12, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, April 9, 1951.

*Morris A. Shenker* for appellant.

1036

*J. E. Taylor*, Attorney General, and *Arvid Owsley*, Assistant Attorney General, for respondent.

[398] HOLLINGSWORTH, J.—Defendant appeals from a conviction of obtaining money and property by means of a bogus check in violation of Section 561.450, Mo. R. S. 1949, for which offense he was sentenced to imprisonment in the State Penitentiary for a term of four years. The grounds of his appeal are: (1) there was no proof of corpus delicti; (2) admission into evidence of declarations of an alleged co-conspirator without proof of the conspiracy, and (3) there was no proof of intent to defraud one Golda Logsdon, as alleged in the information. These assignments require a detailed statement of the testimony, all of which was given by witnesses for the State.

Clyde Logsdon testified that on June 30, 1948, he lived at 4440 Chippewa, St. Louis, where his mother operated a radio store under the name of Chippewa Radio and Appliance Company. About seven p. m. on that date a man came into the store, selected a new Westinghouse portable radio, the price of which was thirty dollars, and tendered a check for fifty dollars in payment thereof. The man told Clyde Logsdon that his name was Ralph Miller and that the check tendered was a payroll check made out to him by the firm itself. The check, introduced in evidence as State's Exhibit 1, recited, "St. Louis, Mo., June 30, 1948", was drawn on United Bank and Trust Company, payable to the order of Ralph L. Miller, for the sum of fifty dollars, and purported to be drawn by "Central Moving and Storage Co., 4564 Olive Street, St. Louis, Mo., Agents Allied Van Lines, Robert Schuman". The endorsements on the back are not copied into the record nor referred to in the evidence. Logsdon took the check back to his mother and had her "O.K." it, and returned with twenty dollars in cash. The man took the radio and cash and departed. He went across the street and entered a car in which there was another man. On the following day, two police officers brought a radio to the store where Logsdon identified it as the radio sold to the customer on the previous evening. On July 2nd, Logsdon went to the Central District Police Station and viewed a number of men. He saw and identified the man who gave him the check and also saw defendant, but did not recognize him. Defendant was not the man who gave the check and was not in the store when it was given.

A qualified official of the United Bank and Trust Company testified that the check (State's Exhibit 1) was returned for the reason that there was no such account in the bank and that there was no authorization in the bank for Robert Schuman to sign checks and no account in Schuman's name.

Police Officer Ziegenbein testified that he and another officer arrested defendant on July 1, 1948, and took him to police headquarters. Defendant was there confronted with his brother-in-law, a Mr. Robertson. Upon interrogation by Ziegenbein, defendant stated: that he furnished his brother-in-law, Robertson, with this check; that three or four weeks prior to July 1st he and Robertson had entered into a scheme to cash bogus checks, which defendant had ordered printed and subsequently obtained from one Ralph Martin; that the transaction at the radio store on June 30, 1948, was the outgrowth of that scheme; that he did not go into the store when the radio was purchased, but remained in an automobile that had been borrowed and in which he and Robertson had made a tour of the city in connection with this and other checks; that when Robertson took him home at approximately seven o'clock on the evening of June 30, he, defendant, received the Westinghouse radio purchased with the check and ten dollars of

the cash; that the radio would be found in the home of his parents at 5911 Dale Avenue; that he did not know a Ralph L. Miller nor a Robert· Schuman and did know the Central Moving and Storage Company to be a non-existent company; that he had no part in either filling in the check or the use of the check protector to prepare it, but knew that Robertson was passing the check at the time he passed it and knew that the check was [399] not good; and that he knew the radio and cash given him was a part of the proceeds of the check cashed. Officer Ziegenbein further testified that he went to the Dale Avenue address and there recovered the radio and took it to the Chippewa Radio and Appliance Company, 4440 Chippewa Street, where it was identified by Clyde Logsdon.

■ Was the corpus delicti established independent of defendant's confession? Defendant cites, among other cases, State v. Humphrey, 358 Mo. 904, 217 S. W. 2d 551, 552, wherein the court said: "The two elements necessary to prove the corpus delicti of a lottery in violation of § 4704 are: (1) the establishing of a lottery by someone, (2) that the person charged aided or assisted in making or establishing it." However, a careful reading of that case shows that the writer of that opinion really meant to say that the two elements above quoted were necessary to establish guilt of the defendant rather than that they were necessary to establish corpus delicti. This, for the reason, first, that later in the opinion it is stated: "There is no evidence (independent of defendant's statements) to show the operation of any lottery or what took place at the Harlem Club or what defendant did there or elsewhere"; and, second, that the true rule then is stated: "It is a settled rule of criminal procedure that testimony of a confession of the crime charged, made out of court by the accused, must be supported by independent proof of the corpus delicti; that is, by proof that a crime was in fact committed."

In State v. Hawkins, Mo., 165 S. W. 2d 644, 646, it was held: "In this state the corpus delicti has never been construed to require or consist of more than these two elements: (1) Proof, direct or circumstantial, that the specific loss or injury charged occurred; (2) someone's criminality as the cause of the loss or injury. Or tersely, (1) the act; (2) the criminal agency of the act (other than the accused's confession). * * * But, once evidence other than the defendant's confession shows that the specific crime charged was committed by someone, then the defendant's confession is admissible and, of course, if believed completes the case." See also State v. Cooper, 358 Mo. 269, 214 S. W. 2d 19.

While it is the rule that corpus delicti must be proved independent of a confession, as set forth in the above cases, yet the requirements of the proof thereof are not as strict in cases where the facts proved correspond with the circumstances detailed in the confession. State v. Arndt, Mo., 143 S. W. 2d 286, 287. The testimony of Clyde

Logsdon that Robertson represented the check to be a payroll check and that he was Ralph Miller, the payee named therein, both of which statements were false, establishes, without more, the corpus delicti, to-wit: the criminal act and the criminal agency. And, too, the further testimony of Logsdon that after Robertson left the store he was seen to enter a car in which a man was sitting; the clear inference that the man in the car must have known Robertson obtained the radio at the store from which he emerged; the finding of the radio at the home of defendant: all correspond with the circumstances related in the confession.

Defendant assigns as error the admission into evidence of the acts and declarations of Robertson prior to any showing of a conspiracy existing between him and defendant to commit the crime with which defendant is here charged as a participant. At the time this evidence was offered and admitted there was no proof of the conspiracy, but upon the state's assurance there would be such proof, the court admitted the evidence. We need not dwell upon the evidence showing that such a conspiracy did exist and was proved. Defendant's admissions to the police officer not only clearly established the conspiracy but also defendant's preparation for and active participation in Robertson's act in uttering the check and obtaining the radio and twenty dollars in money, and the division of the proceeds between them. We have found no case that holds it error to admit into evidence acts or declarations of a co-conspirator prior to proof of the conspiracy if such evidence is produced during the course of the trial. "It is a [400] principle of law in criminal procedure that the order of proof of a conspiracy, with reference to the introduction in evidence of the acts and declarations of the alleged co-conspirator, must be left largely to the discretion of the trial judge." State v. Fields, 234 Mo. 615, 623, 138 S. W. 518. Also, State v. Parr, 296 Mo. 406, 246 S. W. 903; State v. Craft, 299 Mo. 332, 253 S. W. 224; State v. Arndt, supra. We rule this assignment against defendant.

Defendant contends that the delivery of the check to Clyde Logsdon and the fact that Golda Logsdon was not present and that defendant had no negotiations or transaction with her reveals a fatal hiatus in the proof. In the case of State v. Allen, 171 Mo. 562, 71 S. W. 1000, it was held that delivery of a forged check to a clerk, whereby money was obtained from the owner merchant was an immaterial variance. See also State v. Frank Griggs, Jr., 361 Mo. 758, 236 S. W. 2d 588. The assignment is without merit.

Defendant's final contention is that the court erred in submitting the case under instructions requiring a finding that defendant obtained the property and money described in the information and evidence with intent to cheat and defraud Golda Logsdon. The information charged that the defendant "with intent to cheat

1040

and defraud Golda Logsdon, doing business as Chippewa Radio and Appliance Company'', etc. The name ''Golda Logsdon'' does not appear in the oral evidence. On the back of the check (State's Exhibit 1), which we had sent up to the clerk of this court, there is a pen-written endorsement of the name ''Golda Mae Logsdon'', a pencil notation of ''4440 Chippewa'', and other illegible stamp endorsements. However, the record does not show whether the back of the check was shown to or considered by the jury, and we will assume it was not. Clyde Logsdon testified that his mother operated a radio store under the name of Chippewa Radio and Appliance Company at 4440 Chippewa, where both he and she worked; that his mother was in the rear of this place when the check was presented and that she ''O. K.'d'' it before he delivered the radio and money in exchange therefor. In support of his contention, defendant cites State v. Block, 333 Mo. 127, 62 S. W. 2d 428, State v. Craig, 328 Mo. 938, 43 S. W. 2d 413, and State v. Herman, Mo., 162 S. W. 2d 873. They are not in point. He also cites State v. Horn, 93 Mo. 190, 6 S. W. 96, and State v. Reynolds, 106 Mo. 146, 17 S. W. 322. These cases were written when the statute on cheats and frauds set forth a form of information that required the name of the person whom it was charged the accused intended to defraud to be stated. This form was disapproved in State v. Crooker, 95 Mo. 389, 8 S. W. 422, and criticised in State v. Reynolds, supra. The statute was later repealed and reenacted with the form of information omitted. Laws 1909, p. 444.

We cannot believe defendant was prejudiced by the omission. He was apprised by the information that the store was operated under the name of Chippewa Radio and Appliance Company. The proof showed that was the place of business defrauded, and that Clyde Logsdon's mother owned it. Defendant could not be prosecuted again for the same offense, regardless of whether the owner's name was Golda Logsdon or some other. Section 546.080, Mo. R. S. 1949, provides that no variance between the statement of the information and the evidence in the name of any person or description of anything or matter or in the ownership of any property shall be deemed material unless the trial court shall find that such variance is material and prejudicial. The trial court did not so find and we hold it did not abuse its discretion. State v. Quinn, Mo., 142 S. W. 2d 79, 80; State v. Fitzsimmons, 338 Mo. 230, 89 S. W. 2d 670; State v. Fike, 324 Mo. 801, 24 S. W. 2d 1027; State v Nelson, 101 Mo. 477, 14 S. W. 718.

Furthermore, Section 545.170, Mo. R. S. 1949, is applicable to the charge and proof in this case. It provides: ''It shall be sufficient in any indictment for any offense where an intent to injure, cheat or defraud shall be necessary to constitute the offense, to allege that the defendant did the act with such intent, without alleging the intent of the defendant to be to [401] injure, cheat and

defraud any particular person; and on the trial of such offense, it shall not be necessary to prove an intent on the part of the defendant to injure, cheat or defraud any particular person, but it shall be sufficient to prove that the defendant did the act charged with an intent to injure, cheat or defraud." It must be presumed that the defendant intended to defraud the person whom he actually defrauded. State v. Chissell, 245 Mo. 549, 150 S. W. 1066.

The judgment of the trial court is affirmed. All concur.