**STATE of Missouri, Respondent,**

**v.**

**John KENNEDY, Appellant.**

**No. 51094.**

Supreme Court of Missouri,

Division No. 2.

Nov. 8, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 13, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Dennis D. Quillen, Special Asst. Atty. Gen., Clayton, for respondent.

Forrest Boecker, St. Louis, for appellant.

BARRETT, Commissioner.

A jury found the appellant Kennedy guilty of burglary in the second degree and stealing property of the value of "at least" $50.00 and fixed his punishment at two years' imprisonment for each offense (Section 560.095(2) RSMo 1959, V.A.M.S.), "for an aggregate of four years," with the consequence that the sentences are successive, not concurrent. Section 560.110 (2) RSMo 1959, V.A.M.S.

The information appropriately charged that on July 16, 1963, Kennedy, in Warren County, "feloniously, and burglariously (did) break into and enter a certain building in which there was at the time no human being, * * * the property of Jim Laflin, an individual, and being a building in which diverse household furnishing and other valuables were then and there kept * * * and did then and there feloniously and burglariously steal, take and carry away the following, to wit: One Sears Dehumidifier, one G. E. table radio, one Motorola T.V., one 20 x 50 Binoculars, one gun lamp, one 22 Remington pump gun, two electric heaters, one 5th of Southern Comfort, one 5th of gin, one 5th of scotch, one 5th of bourbon, one G. E. electric clock, one G. E. electric automatic toaster, and one G. E. automatic coffee pot, having a total of $380.00, and being the personal property of Jim Laflin, an individual * * *." Sections 560.045, 560.156–560.161 RSMo 1959, V.A.M.S. State v. Zammar, Mo., 305 S.W.2d 441.

The proof was that Mr. Laflin of St. Louis County owned a seven-room lodge on his three-hundred acre ranch in Warren County. The Laflins spent the weekend of July 13–14, 1963, at the lodge, leaving in the evening of the 14th after checking and locking the doors and windows. On July 16, in response to a telephone call Mr. Laflin returned to the lodge and found the doors to both the guesthouse and the lodge ajar and the lights on in the basement, "the door to the guesthouse was split, and there was a footprint on the door; the door to the lodge itself and the lock jammed, and the catch that holds the lock was pushed free and the wood behind the doorjam was pushed out and broken and split." The fourteen or so items listed in

the information were found to be missing from the lodge. On July 23 Mr. Laflin, with the Sheriff of Warren County who had a warrant for his arrest, went with two City of St. Louis police officers to Kennedy's home at 821 Academy. After knocking on the door Kennedy identified himself, the sheriff read the warrant to him and placed him under arrest. One of the officers said they "would like to look for certain articles," Kennedy replied, "Go ahead and look." The sheriff said, "We found a .22 rifle in a pantry; we found a part of a bottle of liquor, gin, on the television set in his living room; he had a radio, a G. E. radio, and also a G. E. clock." Mr. Laflin, identifying certain articles, said, "this is the General Electric radio, table model radio, which was taken from the Lodge and which John Kennedy went into the back bedroom of his home and gave to me on the 23rd, when we were there at his house." Likewise he said of the electric clock, "it is the clock (value $10.00) which John Kennedy gave to us." The gin Mr. Laflin identified because it was an unusual, imported brand, "Tanquer," expensive, $6.50 a fifth. Also he testified, "this gun was in the pantry on the shelf clear behind the pans, in the kitchen of John Kennedy's home," and its value was $40.00. In conclusion, in describing the trip to Kennedy's home, Mr. Laflin said of Kennedy, "what happened, each item I asked for specifically, he gave me, but he volunteered no items that we did not ask for." The court sustained an objection to an answer "Yes, sir; he knew where they came from," but permitted the answer "He told me, Sir," and the question and answer: "Did he tell you? A. Yes, Sir."

It will be noted that there is no direct proof that Kennedy actually broke open the doors or burglarized the Laflin lodge, neither in one sense is there any direct proof that he stole the property found in his residence. Nevertheless the appellant does not challenge the rule that both the burglary and the larceny (here stealing) may be found from his recent, unexplained possession of the property, provided the character and circumstances of the possession meet the tests. 12 C.J.S. Burglary § 59, p. 735; 13 Am.Jur.2d §§ 53–54, pp. 354–355; State v. Warford, 106 Mo. 55, 16 S.W. 886. The appellant's contention is that certain facts in this record make the unfavorable inferences from possession "untenable" and that therefore he was entitled to a directed verdict of acquittal as to both charges. Virtually the same contention is made in his complaints that there was a variance in pleading, opening statement and proof as to identity of the articles stolen, their value and ownership. And in this connection it is said that the court erred in giving Instructions 2 and 4 because "there was a fatal variance between the evidence of the ownership of this stolen property and that hypothesized in each instruction."

■ The latter argument has to do with the fact that in the beginning Mr. Laflin testified as if the radio, valued at forty to fifty dollars, belonged to him personally. The fact was that he purchased the radio and gave it to his wife even though it was a part of the lodge household property. It is said that on this record there was a fatal variance in the information, proof and Instruction 4, all of which included this item in its hypothesis. It is urged therefore that the case falls within State v. Wright, 339 Mo. 41, 95 S.W.2d 1159, in which the indictment charged that the "appellant had burglarized the home of one R. Winfield Scott" when the proof was the house belonged to Roma Scott. It was held that "the name of the owner of the property and the owner of the home burglarized was essential, because the name of the owner was the only description in the indictment identifying the property. It was therefore very material, and a variance therein, between the charge and proof, would have been fatal." But in this case there is no question as to the ownership of the property burglarized, the lodge, and while the radio was listed in the information and instruction there were other items,

the gun, the gin, and the clock and the value of these items totals $56.50, a sum in excess of that specified in the stealing statute and they unquestionably were the property of James Laflin. Thus the case is unlike State v. English, 67 Mo. 136, in which there was held to be a fatal variance in a larceny of money when the charge was "the property of John Peter Sinish" and the instruction authorized a conviction upon a finding of "the property of Peter Sinish." And of course the case is unlike State v. Roswell, 153 Mo.App. 338, 133 S.W. 99, in which "the proof offered is insufficient to show it was his property or that of any one else."

But this is only one phase of the appellant's argument, his principal claim of failure of proof and of variance is that "of the fourteen items charged in the information" only four of the items were found in his residence and therefore it is said that possession of this "trifling and inconsequential part thereof" (State v. Belcher, 136 Mo. 135, 138, 37 S.W. 800, 801) repels any possible inference of guilt of either the burglary or the larceny. In this connection it is said that the "lapse of a week's time and the interval of sixty miles" is an additional factor repelling any unfavorable inference. Then too it is said that another (the appellant's brother) had confessed the burglary without implicating the appellant and therefore there was an explanation. State v. Duncan, 330 Mo. 656, 50 S.W.2d 1021.

▇▇▇ The weakness of the appellant's argument is that it ignores the theory and basic tests of the rule of recent possession, unexplained, of stolen property or property stolen in a burglary. The tests and rules are set forth in State v. Denison, 352 Mo. 572, 178 S.W.2d 449, a larceny case, since the appellant was acquitted of the burglary charge. "Recent possession" is to be determined from the facts of each case, there is no definite rule: " '[i]t varies under the

facts in the particular case from two years to a period of a few days,' " and there possession of an adding machine and a typewriter two months after the larceny was not too remote. Likewise "possession," upon this record, was shown because, in the language of State v. Denison, "he was in actual, conscious possession of both." And it is pointed out in that case "unexplained" does not mean that if the appellant "presents an explanation" the unfavorable inferences are repelled; "the credibility of the explanation is a question of fact for the jury; and if the jury disbelieves it the case stands with his possession *unex*plained." Furthermore in that case in addition to a typewriter and adding machine there was also stolen $100 worth of carpenters' tools, ten dozen paint brushes and numerous other items and the appellant claimed that this presented "conflicting inferences" and, in effect, repelled application of the rule. But the court said, "He is not charged with stealing any property except that traced to his possession." See also State v. Oliver, 355 Mo. 173, 195 S.W.2d 484.

▇▇▇ Two other matters relate to and could possibly affect the conviction as to both the burglary and the larceny and the first of these has to do with the claim that in the prosecuting attorney's argument there was an "improper comment on the appellant's failure to testify," (Section 546.-270 RSMo 1959, V.A.M.S.; Criminal Rule 26.08, V.A.M.R.) and which the appellant also asserts was "a violation of his constitutional right against self-incrimination." Const.Mo., Art. I, § 19, V.A.M.S. The statute implements and gives meaning to the constitutional provision but they do not always involve the same problems. And in no event could this or any other case in Missouri involve the same problems presented in Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, because in California, among other distinguishing factors, the trial court spe-

cifically instructed the jury that "if he does not testify * * * the jury may take that failure into consideration * * as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable." As to whether the language violates the prohibition of the statute there is no need to collect and match cases, that has all been done repeatedly. "The key words of the statute * * * are 'accused' and 'testify,' and the ultimate test of whether the prohibition has been violated is whether the jury's attention was called to the fact that the accused did not testify." State v. Hayzlett, Mo., 265 S.W.2d 321. The language complained of was in the state's opening argument: "Mr. Laflin testified that he did not at any time give that property to anyone and that no one other than Mr. Laflin and his family had any interest in the personal property or in the lodge. Now, on July 23, 1963, that property was in the home of John Kennedy. There has been no explanation as to how that property got there." No precisely similar statement has been cited or found but it is not comparable to " 'I don't know what this boy says. There is no evidence of any type by him in this case * * *.' " State v. Lindner, Mo., 282 S.W.2d 547, 550. Rather the language is somewhat comparable to the statements (all of which were held not to constitute references to the defendant's failure to testify) " 'On one side is the State's evidence, not contradicted. And what is on the defense side? It is empty.' " (State v. Hite, Mo., 298 S.W.2d 411), "The defendant knows about things you don't know about. It wasn't our fault. He had as full an opportunity as we did to produce evidence" (State v. Romprey, Mo., 339 S.W.2d 746, 755), "the only evidence produced was the State's evidence" (State v. Perkins, Mo., 382 S.W.2d 701) or with other language " 'because they stand here stripped of all defenses, they have offered no defense to you.' " State v. Varner, Mo., 329 S.W.2d 623, 633.

■ The second matter relating to both offenses, that the court failed "to instruct that appellant might be acquitted of either charge, even though he were convicted of the other" (State v. Qualls, Mo., 383 S. W.2d 547, 550) is not borne out by the record. In the first place, the only form of verdict in the transcript is the one returned by the jury finding the appellant guilty of both offenses and fixing the punishment even though, before instructing the jury, the court said, "The Court has prepared 10 forms of verdict. Each of the 10 relate to findings of guilt either for both charges or one or the other and relates to the different ranges of punishment." If this is not sufficient to dispose of the claim, during its deliberations the jury returned to the courtroom and posed the problem: "The jury had the question in regard to the 10 possibilities that were listed in the back and the question had to do with the concurrence of the length of sentence." After extended colloquy the court inquired whether "either counsel have any objection to the Court stating now orally that if multiple punishment is assessed by the jury, the jury does not have the authority to order them to run concurrently." Defendant's counsel responded "That's right. No objection." In these circumstances the assignment of error has no merit.

■ As to the larceny conviction, however, there is substantial merit in the appellant's claim that "it was error to give Instruction 2 because of its failure to describe any specific articles of stolen property." Instruction 2 submitted both the felony offenses of burglary and stealing in a single instruction and particularly as to stealing did not specify or set forth the items charged in the information and shown by the proof, the gun, the clock and the gin, instead the instruction hypothesized a finding of guilt as to the stealing upon a finding that the "defendant did wilfully and feloniously steal, take and carry away

from said building, with the intent to convert to his own use and permanently deprive the owner thereof *any goods, personal property and merchandise of any value whatever,* the property of James Laflin." (Emphasis supplied.) The instruction was drafted in this manner even though Instruction 4 which submitted stealing of the value of "less than fifty dollars" (Section 560.161, subd. 1(1) RSMo 1959, V.A.M.S.) set forth the specified items. It may be that the instructions were drafted and given in this manner on the assumption that the case is governed by subsection 2 of § 560.161, which provides that "The offense defined in subsection 2 of section 560.-156 ("Stealing") is deemed a felony regardless of the value of the property stolen and a person convicted shall be punished as provided in subdivision (2) of subsection 1, if the property intentionally stolen: (1) Is taken from a dwelling house or person." Mr. Laflin described his 300 acre ranch and its living quarters as a "lodge" or "summer home" and perhaps that is sufficient to bring the case within this statute, although the charge and conviction are of second degree burglary. Section 560.050 RSMo 1959, V.A.M.S. Nevertheless that does not dispose of the immediate problem, the charge and proof were that irrespective of value the appellant was guilty of stealing specified items, 3 or 4 out of 14, and the instruction permits a conviction of the felony of stealing upon a finding that he "stole *any of the personal property* kept in said shop, irrespective of whether the jury found defendant had stolen *any of the four items alleged in the information to have been stolen.* In other words, to illustrate, the instruction authorized conviction of defendant if it found that he stole any of the clothing (of which there was highly substantial evidence), de-

spite the fact that the information did not charge him with stealing clothing, or despite the fact that the jury may not have found beyond a reasonable doubt that he stole any of the items described in the information." State v. McBride, Mo., 366 S.W.2d 374, 379. The McBride case and State v. McCollum, Mo., 377 S.W.2d 379, are precisely in point and up to now controlling and in the McCollum case a house in Independence was burglarized and several items were stolen, the appellant being specifically charged with stealing a television set and a sewing machine. An examination of the files in those cases reveals that there were separate instructions on burglary and stealing. But in the McCollum case after stating that "no other instruction required a finding that McCollum stole the television and the sewing machine as charged in the information" the court followed State v. McBride and for this specific reason reversed and remanded the stealing conviction.

Accordingly, the judgment of conviction of the defendant for the crime of burglary in the second degree is affirmed. The judgment of conviction of the defendant for stealing in connection with the burglary is reversed and the charge of stealing is remanded for further proceedings consistent with this opinion.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.