STATE of Missouri, Respondent,

v.

L. S. AMERISON, Appellant.

No. 51606.

Supreme Court of Missouri, Division No. 1.

Feb. 14, 1966.

**54**

Norman H. Anderson, Atty. Gen., Jefferson City, Charles C. Hatley, Asst. Atty. Gen., New Madrid, for respondent.

William B. Spaun, Hannibal, for appellant.

DONNELLY, Judge.

Appellant, L. S. Amerison, was convicted of first-degree robbery under § 560.120 RSMo 1959, V.A.M.S., by a jury in the Hannibal Court of Common Pleas, at Hannibal, Missouri, and his punishment under the provisions of the Habitual Criminal Act, § 556.280 RSMo 1959, V.A.M.S. (as amended Laws 1959, S.B. 117), was assessed at imprisonment in the custody of the State Department of Corrections for a term of twenty years. Jurisdiction was in the Hannibal Court of Common Pleas because the offense was alleged to have been committed in Mason Township, County of Marion, Missouri. Section 480.-200 RSMo 1959, V.A.M.S. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

Appellant does not question the sufficiency of the evidence. However, a brief summary is in order. According to the evidence, on October 18, 1961, between 11:00 and 11:15 p. m., two men entered Foley's Drive-In Package Liquor Store, 922 Mark Twain Avenue, Hannibal, Missouri. Mrs. Loretta Wingfield, co-owner of the store, had just completed counting the day's receipts. According to Mrs. Wingfield, appellant started to use the telephone book and then shoved a gun in her stomach and ordered her into the rest room. He searched her for money in the rest room and she told him the money was in the cash register. He then left her and she could hear money being dumped into cloth. Appellant walked back to the rest room and told her to stay in there and keep still. He and his companion then left. After about a minute, Mrs. Wingfield returned to the cash register, found the money gone, except for a few pennies, and called the police. Mrs. Wingfield identified appellant in the courtroom at the trial as the man who robbed her. It is evident that the evidence was ample to sustain the conviction.

Appellant contends that he was not brought to trial in a timely manner, and should have been discharged under the provisions of § 545.890 RSMo 1959, V.A.M.S. Appellant was arraigned April

13, 1964, and the case was set for trial November 16, 1964, the first date available. Later, the trial court being advised that appellant had not employed an attorney to represent him, the trial of the case was continued and reset for January 12, 1965. On January 7, 1965, the trial court appointed counsel to represent appellant. On January 12, 1965, counsel for appellant requested a continuance in order to have time to prepare. The case was set for trial May 24, 1965, and trial was had beginning on said date. What constitutes laches within the meaning of § 545.890 RSMo 1959, V.A.M.S., was construed in State v. Nelson, Mo.Sup., 279 S.W. 401, at 403, to be the failure of the State to justly afford the accused "such a speedy hearing and determination of the charge against him as is accorded by the Constitution." We have examined the various entries of the trial court's orders on continuances in this case and they do not sustain appellant's contention. Appellant was not entitled to be discharged.

■■ Appellant contends that the trial court erred in not granting him a continuance because of a newscast on the local radio station which appellant alleges deprived him of a fair and impartial trial. In his application for continuance, appellant stated: "That on the 21st day of May, 1965, just several days before the trial of this cause, one, Sam Dindia, a Police Sergeant of the City of Hannibal, in a very popular news broadcast here in Hannibal and in this area for many people, voluntarily stated over said Radio Station KHMO, which is heard by many people in this community, that the Sheriff, or in words and substance, that the Sheriff of Marion County, Missouri, had brought a very large visitor to their jail from Jefferson City, you know the one who subpoenaed Sonny Liston for his trial next Monday, which fell through; he is a very big man and we are considering keeping a very close watch on him because he is dangerous." We cannot convict the trial court of prejudicial error for failure to grant a continuance under these circumstances. " * * * What constitutes unusual or extraordinary circumstances sufficient to entitle accused to a continuance is ordinarily a question addressed to the sound discretion of the trial court. Since the trial court can much better determine the propriety of a postponement on this ground than can the appellate court, it requires a very strong showing to induce the higher court to interfere, and it will disturb the action of the trial court only where a clear abuse of discretion is shown. * * * " 22A C.J.S. Criminal Law § 497, pp. 157–158; State v. Golden, 353 Mo. 585, 183 S.W.2d 109, cert. den. 324 U.S. 874, 65 S.Ct. 1013, 89 L.Ed. 1427; State v. Engberg, Mo.Sup., 377 S.W.2d 282. The trial court did not abuse its discretion in failing to grant a continuance.

■ Appellant alleges that he should have been granted a new trial because of a news broadcast at noon on the date of trial, "which said broadcast over Radio Station KHMO could have been heard by all jurors." We need not rule on the question of alleged prejudice here. Appellant failed to show that any member of the jury heard the broadcast prior to the rendition of the verdict. State v. Darrow, Mo. Sup., 104 S.W.2d 249, 251–252; State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 104.

■ Appellant, a Negro, alleges that Negroes were systematically excluded from the jury panel and he was denied a fair and impartial trial. The record does not support his contention. Paul O. Munger, clerk of the trial court, testified that there were no Negroes selected as jurors on the jury panel involved here. However, his further testimony was as follows:

"Q. Paul, do you know whether or not there are any names of any colored people in the jury box when you pull the jury panel before the list is drawn?

"A. We have approximately fifty to seventy-five names in the box.

"Q. And in the past, colored peoples names, and colored people have been drawn and listed on the jury panel of the court?

"A. That's right.

"Q. For the past several years, in fact? A. Yes, sir.

"Q. There is no exclusion of colored people from the jury box, is there? A. No, sir.

"Q. If they are qualified by law, then their names are included in the box? A. That's correct.

\* \* \* \* \* \*

"Q. How many negroes are in the jury box? .

"A. Well, I would have to make an estimate of it, Mr. Spaun. I would say between fifty and seventy-five.

"Q. How many white people? A. Around five hundred.

"Q. In other words, you put about ten percent of—

"A. Well, I don't go on a percentage basis, Mr. Spaun. If any colored person who' has the qualifications to serve as a juror, I am glad to put their names in the box. In fact, I am always looking for addition ones to put in."

The applicable law was stated in State v. Logan, 341 Mo. 1164, 1172, 1173, 111 S.W.2d 110, 114, 115, as follows: " \* \* \* It is not the law that the appellant was absolutely entitled to have negroes on the jury that tried him, or even on the panel from which that jury was drawn. It may happen that no negroes (or members of any other particular class of our citizens) will be on the regular panel for a given term of court, or on the special venire for a particular case. If that occur in due course and good faith because of the ratio of white to negro population, or because of actual disqualifications, pure chance or the like, it is within the law; but if the defendant be deprived by design of the *chance* of having negroes on the jury which is to try him, the Federal Constitution may be invoked. \* \* \*" See also Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692; Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; State v. Ramsey, 355 Mo. 720, 197 S.W.2d 949; State v. Brownridge, Mo.Sup., 353 S.W.2d 715. The burden to establish discrimination is on appellant. Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; Akins v. State of Texas, supra; State v. Ramsey, supra. The burden is not sustained here. There is no showing of any systematic or intentional exclusion of Negroes from the jury. This point is ruled against appellant.

An examination of the record as required by Rule 28.02, V.A.M.R., discloses no error. The judgment is affirmed.

All concur.