**STATE of Missouri, Respondent,**

v.

**Lee T. DAVIS, Appellant.**

**No. 55513.**

Supreme Court of Missouri, Division No. 2.

Feb. 8, 1971.

John C. Danforth, Atty. Gen., Thomas H. Stahl, Asst. Atty. Gen., Jefferson City, for respondent.

Legal Aid and Defender Society of Greater Kansas City for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

BARRETT, Commissioner.

The appellant, Lee T. Davis, with a prior felony conviction, has been found guilty of burglary and stealing. The court fixed his punishment at six years for the burglary and three years for stealing, the sentences to run concurrently.

Before considering the eight points having to do with the trial there is one preliminary matter that may be disposed of summarily. Unaware of the fact that the question had been decided almost ten years ago the appellant has launched an attack upon the constitutional provision relating to women serving as jurors, particularly upon the provision that "the court shall excuse any woman who requests exemption therefrom before being sworn as a juror" (Const.Mo. Art. 1, Sec. 22(b), V.A.M.S.) and the implementing statute and form "official notice and questionnaire" insofar as it is directed to women. V.A.M.S.Supp. § 497.130. It is not necessary to set forth appellant's elaborate argument because similar attacks were made on a Florida statute, all but identical with the constitutional provision, in Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118. The Missouri constitutional provision is cited in a footnote as typical of the recent enactments relating to women and jury service. In part the court said, "We cannot say that it is constitutionally impermissible for a State, acting in pursuit of the general welfare, to conclude that a woman should be relieved from the civic duty of jury service unless she herself determines that such service is consistent with her own special responsibilities." In that same case the court also rejected an attack on the statute on a factual basis and concluded that there was no arbitrary or systematic exclusion. If, as stated, the statutes are constitutional, a fortiori similar constitutional provisions are valid. 47 Am.Jur.2d (Jury) § 171, p. 762. In this connection there are a series of arguments against both provisions but they arose after the voir dire examination, there were two women on the panel and one was selected to serve, when counsel orally said, "I will challenge the jury wheel or the grand jury of the petit jury which is called here for cause on the grounds that, number one, the jury is not drawn from a cross section of the community, and there is not a fair representation of all members of the community, and number 2, the females may excuse themselves without just cause under the provisions of the Missouri Constitution." There was no formal challenge to the array or to quash the panel and unlike Hoyt v. Florida there was no factual basis and no offer of proof in support of the attacks. United States v. Forest, D.C., 118 F.Supp. 504. The burden to sustain his claims was on the appellant (State v. Amerison, Mo., 399 S.W.2d 53, 56) and his counsel's mere oral assertions are wholly insufficient for that purpose. State v. Mooring, Mo., 445 S.W.2d 303, 305; State v. Dowe, Mo., 432 S.W.2d 272. And see State v. Parker, Mo., 462 S.W.2d 737.

Four of the appellant's assertions of prejudicial error are involved with the facts as the jury could and did find them. Lyle Davis, Jr., and Vernon Scott owned the Conoco gasoline station known as Lyle's Service Station at 3400 Linwood Boulevard. The appellant, Lee Davis, not related to Lyle, had worked in the filling station for four or five months. He left the employ of Davis and Scott in February 1969 and in June was working in another Conoco station and carried a key to the cash register in that station. On June 20, 1969, Lyle Davis opened the filling station and

so he left in the late afternoon: But before leaving he placed his wristwatch in the cash register and the station's keys in a table drawer beneath the cash register. Lyle said that when he left there were three rolls of coins in the cash register, a roll of nickles, a roll of dimes and a half-roll of quarters. On June 20, 1969, at 12 o'clock, Scott locked the cash register, took the key, and securely locked the doors and windows. When he left there was a wristwatch in the cash register and "change * * * the money that we had worked with during the day" which he estimated at $25.00. In the station there were two or three coin-operated machines, tires, oil, tools and a considerable stock of such merchandise as is usually kept in filling stations. At 5:10 a. m. Patrolman Neuner cruising at 31st and Linwood noticed an automobile parked next to one of the pumps at Lyle's Service Station, the trunk was up and "a colored male (the appellant) standing directly behind the trunk." When the appellant saw Neuner he started walking north on Indiana Avenue. The patrolman followed the defendant, radioed Patrolman Braden to check the service station and within two or three minutes Braden "stated that the service station had been broken into." (It turned out that a window had been "broken out," the overhead door had been raised about five inches, the coin-operated machines had been broken open and a quantity of merchandise had been placed in the parked automobile.) Upon receipt of information of the burglary Neuner stopped the defendant, another officer arrived, and the two officers "searched the suspect." The search turned up a "brake adjustment tool," newly purchased by Scott, "in his right rear pocket," a man's watch, "a set of keys, and a large amount of change," $39.40. The officers returned to the station with the apppellant, they examined the doors and windows and the large quantity of merchandise in the automobile of the total value of $648.10. Scott came to the station and identified the merchandise. One of the keys in appellant's possession was a cash register key and it fit and opened the cash register.

The information in charging the burglary and stealing listed the 35 or more items and the value of each, all of "the aggregate value" of $648.10. Included in the list were the wristwatch, a cash register key and a ring of keys. In these detailed circumstances, needless to say, particularly the defendant's possession of the watch and cash register key, the jury's finding and verdict are supported and the court did not err in overruling the motions for acquittal. State v. Kennedy, Mo., 396 S.W.2d 595. The information, although unique in some respects, properly charged the offense of burglary second degree and stealing (RSMo 1969, §§ 560.045, 560.070, V.A.M.S.) and because there was some conflict in the proof as to the precise amount of change found on the appellant, or whether it consisted of "loose change" or three or more rolls of coins of different denominations and sums did not constitute a "variance (is) material to the merits of the case and prejudicial to the defense of the defendant." RSMo 1969, § 546.080, V.A.M.S.; State v. Stewart, 228 Mo.App. 187, 63 S.W.2d 210; State v. Fike, 324 Mo. 801, 24 S.W.2d 1027. The appellant offered no evidence and necessarily there was no supported defense of purchase of any of the property or of permission and thus the court did not err in failing to instruct the jury on all the law of the case. Compare State v. Powers, Mo., 442 S.W.2d 4; State v. Tate, Mo., 436 S.W.2d 716 and State v. Drane, Mo., 416 S.W.2d 105.

Also in this factual background is the assertion that the appellant "was arrested without a warrant and without probable cause" and therefore there was a violation of state and federal due process. It is not necessary to distinguish the cases relied on by the appellant, cases dealing with probable cause for the issuance of a warrant by a magistrate (Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637) or of a belated stopping of an auto-

mobile and arrest based on one's mere "association" with a suspected burglar, State v. Seymour, Mo., 438 S.W.2d 161. The appellant is in no position to complain of the search of the automobile State v. McDaris, Mo., 463 S.W.2d 813, the relevant and material search here was of appellant's person. And it is not necessary to again detail the circumstances in which the officer saw the appellant ·at the rear of the loot-laden automobile in the early morning hours, followed him, detained him and finally searched his person and arrested him. This case and all its circumstances fall within and are governed by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and this opinion need not be encumbered by a recitation of the facts of that case. There was here present all the elements of reasonable cause for both the arrest and the search of appellant's person and there was no improper invasion of constitutional rights. 38 K.C.L.R. 167, 199; State v. Berstein, Mo., 372 S.W.2d 57; Rodgers v. United States, 8 Cir., 362 F.2d 358, 362.

■ Of the four asserted grounds for a new trial not connected with the facts of the substantive offenses of burglary and stealing the last one has to do with the court's giving of instruction 7: "The court instructs the jury that if they have a reasonable doubt of defendant's guilt, they should acquit, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching defendant's guilt and not a mere possibility of defendant's innocence." In his argument here citing only the proposed Missouri Bar Draft Pattern Criminal Instructions, § 2.02 relating to assumption of facts, RSMo 1969, § 546.380, V.A.M.S., and Criminal Rule 26.-09, V.A.M.R., both dealing with the trial court's duty to instruct the jury in writing, the appellant talks about the state's burden and the "quantitative terms" of instruction 7. In the trial of the case the appellant urged this point even before the trial began and even before the court gave the usual general and introductory instruction to the jury. His counsel offered the court

an instruction, said to have been adapted from the civil rules, relating to the "presumption of innocence" and "burden of proof" and he requested that these be given at the outset of the trial and not at the conclusion with all the instructions to the jury. The court refused to accede to that request but offered to give the offered instruction at the outset but proposed to also give an instruction on these subjects at the close of the case. In discussing the instructions at the conclusion of the evidence counsel objected that it "defines reasonable doubt in a manner in which it is contended it invades the province of the jury that the purpose of the jury is to establish what is reasonable and in this situation the Court is telling the jury what is reasonable, thereby invading the province of the jury." The short answer to this unique and difficult-to-follow argument is that as to the "order of trial" the court followed the rule and the statutes as they have existed since 1879—the instructions of the court to the jury in arriving at a verdict following upon the conclusion of the evidence. V.A.M.S. § 546.070; Criminal Rule 26.02. Instruction 7 relating to reasonable doubt was adapted from the suggestions in State v. Nerzinger, 220 Mo. 36, 119 S.W. 379 and in the particular cases it has since been held that this and similar instructions were not prejudicially erroneous. State v. Caffey, Mo., 365 S.W.2d 607, 612; State v. Durham, Mo., 418 S.W.2d 23, 32; State v. Howard, 324 Mo. 145, 23 S.W.2d 11, 15; State v. Lewis, 273 Mo. 518, 201 S.W. 80, 84.

■ In the order in which they occurred there is the unusual claim that the court erred "in allowing a different prosecutor to rebut appellant's closing argument than the one who gave the opening portion absent a showing of necessity or just cause." Again the court followed the conventional order of trial: "Counsel for the prosecution shall make the opening argument, the counsel for the defendant shall follow, and the counsel for the prosecution shall conclude the argument." V.A.M.S. § 546.070

(5). Despite the fact that the state was represented throughout the trial by two lawyers, both of whom took part in the trial, defendant's counsel objected "Your Honor, by splitting their time the Prosecutor has taken time to rebut the argument made by State. This is not the man that made the original argument. How can he rebut something made to another person's statement?" Since 1884 the statute, § 546.070(5), has been construed as contemplating alternating arguments, the state always with the right to open and close. State v. Collins, 81 Mo. 652. Even though the statute says "(t)he prosecuting attorney must state the case" (V.A.M.S. § 546.070(1)), it was long ago held that there was no error in permitting an attorney employed to assist the prosecuting attorney to make "the statement of the case to the jury." State v. Stark, 72 Mo. 37, 38. In State v. Kowertz, 324 Mo. 748, 25 S.W.2d 113, it was objected that an assistant attorney general was permitted to make the closing argument. The court concluded, and the ruling is applicable here; "Since the statute did not provide that the prosecuting attorney should close the argument, it was clearly within the discretion of the trial court to determine the order in which counsel should argue the case." And see State v. Stearman, Mo.App., 47 S.W.2d 176.

■ A third assignment of error is that "the jury was guilty of misconduct" (RSMo 1969, § 547.020(2), V.A.M.S.) necessitating the granting of a new trial. In support of this assertion the appellant called the bailiff who testified that at a lunch period in the jail he overheard the lady juror, Louise Washington, inquire of the matron "sent up to accompany us to lunch," Zella Gibbons; "One of the jurors was asking about the accommodations there at the jail, and other small talk, and then the question was asked as to the tenure of prisoners in the Jackson County Jail, to which the reply was 'As to the best of my recollection I believe it is one year.'" This witness had no knowledge of any

other juror being informed of this fact, nevertheless appellant's counsel requested a mistrial. The court in overruling counsel's objection said, "It is dubious whether the conversation recounted would be misconduct under any circumstances, but it is particularly true in this case submitted under the Second Offender Act." Of course communications between jurors and outsiders are not proper but always the emphasis has been concerning the case in which they are sitting and innocent communications do not require the granting of a new trial. 53 Am.Jur. (Trial) § 907, p. 652. Pursuant to the mandate of the statute, the jury being allowed by agreement to separate, the court repeatedly "admonish(ed) them that it is their duty not to converse among themselves, nor to suffer others to converse with them or in their hearing on any subject connected with the trial." RSMo 1969, § 546.230, V.A.M.S. The incident here is not comparable to the sheriff in State v. Jones, 363 Mo., 998, 255 S.W. 2d 801, telling a juror trying a burglary case about his experiences with burglary cases—the sheriff being an important witness in the case on trial. The inquiry and response here had nothing to do with the case on trial, it was completely innocent "small talk" wholly unrelated to the case and in no event does it require the granting of a new trial by this court. Annotation 64 A.L.R.2d 158, 178; 39 Am.Jur. (New Trial) § 101, p. 115.

■ A final assignment of error arose in these circumstances: The jury returned its verdict finding the appellant guilty of burglary and stealing. The court said, "Is this your verdict, so say you all? The Jury: Yes, sir." The court then said, "In this particular case you have not been required, members of the jury, to assess a penalty in connection with the conviction, and you are entitled to know at this time what could not be made known to you before, namely, that the charge was under the so-called Second Offender Act." The court then said that it would not impose sentence at that time but would do so after

804

ruling on the motion for a new trial and after a pre-sentence investigation. Following this the jury was polled and discharged. The appellant contends that the verdict was not in fact accepted until after the polling of the jury, and that contrary to the purpose and spirit of the second offender law the court prejudiced the jury by characterizing him as a habitual criminal. This same thing has happened on two other occasions and while it has been said that the practice should be "discouraged" in neither instance was the case reversed for that reason. State v. Maxwell, Mo., 376 S.W.2d 170; State v. Vermillion, Mo., 446 S.W.2d 788. In the particular circumstances of this record there is a persuasive analogy in State v. Hubbs, 294 Mo. 224, 242 S.W. 675. In that case the court learned that the jury had agreed on guilt but were unable to agree on the punishment and, accordingly, the court instructed the jury. RSMo 1969, § 546.440, V.A.M.S. Against the appellant's objection the court gave this rhetorical answer: "Is it error to tell the jury what the law is when it makes such inquiry? We think not. If the jurors had experimented by returning such a verdict on their own motion, they would have learned just what the court told them when they asked about the law, to wit, that their verdict was perfectly legal and entirely acceptable in that form." And so it was here, the court's comment to the jury did not constitute an impermissible "charge" to the jury and there has been no demonstration of manifest prejudice to the appellant.

For all the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.